UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
++++++++++++++++++++++++++++++++++++++++++++++++++

**LENNOX INDUSTRIES, INC.,**

                                    **Plaintiff,**


                    **-v-**                                 **5:03-CV-1347**

**FORTIS, INC. and JOHN ALDEN SERVICE
WARRANTY CORPORATION,**


                                    **Defendants.**
++++++++++++++++++++++++++++++++++++++++++++++++++

**FORTIS, INC. and JOHN ALDEN SERVICE
WARRANTY CORPORATION,**

                                    **Third-Party Plaintiffs,**

                    **-v-**

**WESTERN DIVERSIFIED CASUALTY
INSURANCE COMPANY and PROTECTIVE
LIFE INSURANCE COMPANY,**


                                    **Third-Party Defendants.**
++++++++++++++++++++++++++++++++++++++++++++++++++

APPEARANCES:

Jaeckle Fleischmann & Mugel, LLP
Joseph W. Allen, Esq., of Counsel
Dennis K. Schaeffer, Esq., of Counsel
12 Fountain Plaza
700 Fleet Bank Building
Buffalo, New York 14202
Attorneys for Plaintiffs

Phillips, Lytle, LLP
William J. Brennan, Esq., of Counsel
3400 HSBC Center
Buffalo, New York  14203-2887
Attorneys for Defendants/Third-Party Plaintiffs

Hodgson Russ LLP
Kevin D. Szczepanski, Esq., of Counsel
Jonathan A. Mugel, Esq., of Counsel
Patrick Tomovic, Esq., of Counsel
Jill L. Yonkers, Esq., of Counsel
One M & T Plaza, Suite 2000
Buffalo, New York 14203-2391
Attorneys for Third-Party Defendants

**Hon. Norman A. Mordue, D.J.:**

**MEMORANDUM-DECISION AND ORDER**

**INTRODUCTION**

In this diversity action, filed November 6, 2003, plaintiff Lennox Industries, Inc. ("Lennox") seeks to recover money damages from defendants Fortis, Inc. ("Fortis") and John Alden Service Warranty Corporation [1] ("JASWCO") (collectively, "Fortis/JASWCO"). In September 1998, Fortis purchased John Alden Financial Corporation ("John Alden"), which owned John Alden Service, Inc. ("JASI"), which in turn owned JASWCO. The dispute stems from a contractual relationship, established in 1993, between Lennox and JASWCO.

In the third-party complaint, Fortis/JASWCO asserts claims against defendant Western Diversified Casualty Insurance Company [2] ("WDCIC") and its successor Protective Life Insurance Company ("Protective") (collectively, "Protective/WDCIC"). Relying on two insurance policies issued by WDCIC to JASWCO in 1993, Fortis/JASWCO asserts that Protective/WDCIC is liable to pay any sums Lennox may recover against Fortis/JASWCO. In its third-party answer, Protective/WDCIC asserts a contractual indemnification counterclaim against Fortis/JASWCO.

Presently before the Court are three motions: (1) Lennox' motion (Dkt. No. 32) for partial summary judgment on the issue of Fortis/JASWCO's liability to Lennox; (2) Fortis/JASWCO's motion (Dkt. No. 33) for summary judgment dismissing the complaint, or for summary judgment

---

[1]

There are two John Alden Service Warranty Corporation companies, both owned by John Alden Financial Corporation: (1) John Alden Service Warranty Corporation of Delaware, and (2) John Alden Service Warranty Corporation of Florida. There is no need to treat them separately for purposes of this Memorandum-Decision and Order. Thus, the Court refers to them collectively as John Alden Service Warranty Corporation ("JASWCO").

[2]

Prior to its purchase by Protective pursuant to a Stock Purchase Agreement on September 30, 1997, WDCIC was a wholly-owned subsidiary of JASI.

on its third-party claims against Protective/WDCIC; and (3) Protective/WDCIC's motion (Dkt. No. 37) for summary judgment dismissing the third-party complaint, or for partial summary judgment on Protective/WDCIC's indemnification counterclaim against Fortis/JASWCO.

For the reasons set forth herein, the Court grants the motion of Fortis/JASWCO for summary judgment dismissing the complaint against it; denies Lennox' motion for partial summary judgment; and grants the motion of Protective/WDCIC for summary judgment on the ground that the third-party complaint is moot.

## PLEADINGS

**Amended complaint**

Lennox, a manufacturer and seller of residential heating and cooling equipment, entered into a Service Agreement with JASWCO, effective January 1, 1993, whereby JASWCO would administer and pay claims on service warranties purchased by Lennox' customers. [3]   The Service Agreement was amended December 30, 1994.  (The January 1, 1993 contract and the December 30, 1994 amendment are collectively referred to herein as the  "1993/1994 Service Agreement.") In its amended complaint (Dkt. No. 18), Lennox claims that in 1998 the parties again amended the Service Agreement to provide that, beginning September 1, 1998, Lennox would assume JASWCO's duty to administer the service warranties and would pay all warranty claims that had been JASWCO's responsibility, and JASWCO would reimburse plaintiff for the costs of doing so. Lennox claims that from September 1, 1998, through April 2003, it reimbursed its customers on warranty claims that were JASWCO's obligation in an amount of $472,816.93.  The amended complaint contains causes of action for breach of contract, unjust enrichment, promissory

---

[3]  JASWCO entered into an agreement with Granger, Inc. ("Granger") whereby Granger acted as third-party administrator of the program.

estoppel and declaratory judgment against JASWCO and its successor, Fortis.

**Answer to amended complaint and counterclaims**

In its answer to the amended complaint and its counterclaims against Lennox (Dkt. No. 24), Fortis/JASWCO denies that the 1993/1994 Service Agreement was amended as of September 1, 1998, as claimed by Lennox.  Fortis/JASWCO contends that there is no 1998 written amendment and points to section 11.10 of the January 1993 Service Agreement which provides that it "shall be deemed to constitute the entire agreement between the parties hereto and no waiver, modification or amendment of any of the terms hereof shall be binding upon either of the parties unless in writing and signed by the parties hereto."

In its first counterclaim, Fortis/JASWCO asserts that any amounts which Lennox may recover in the action should be offset by payments owed by Lennox to Fortis/JASWCO under the Service Agreement.  The second counterclaim seeks contractual attorneys fees and costs.

**Amended third-party complaint**

In the amended third-party complaint (Dkt. No. 12), Fortis/JASWCO interposes third-party claims against Protective/WDCIC.  In 1993, WDCIC issued Service Contract Reimbursement Insurance Policies (Nos. JA 00001 and JA 00002) to JASWCO pursuant to which WDCIC agreed to pay all sums which JASWCO was legally obligated to pay as performance or reimbursement for performance of the contractual obligations under "insured contracts."

Beginning in September 1998, Lennox submitted no claims to Fortis/JASWCO under any service warranty until, by letter dated December 11, 2002, Lennox submitted a "report" setting forth payments allegedly made by Lennox for services JASWCO was obligated to perform pursuant to the Service Agreement, and demanding reimbursement from Fortis/JASWCO for these payments.

Fortis/JASWCO submitted Lennox' December 11, 2002 letter to Protective/WDCIC,

-4-

seeking reimbursement under policies JA 00001 and JA 00002 for any amounts Lennox may recover from Fortis/JASWCO.  Protective/WDCIC disclaimed coverage on the ground that Fortis/JASWCO had failed to file proofs of loss "as soon as practical" or within 30 days after the losses, as required by the policies.  In the amended third-party complaint, Fortis/JASWCO asserts a breach of contract claim against Protective/WDCIC, claiming that it is liable to Fortis/JASWCO for any sums Lennox may recover.  Fortis/JASWCO also claims that Protective/WDCIC has been unjustly enriched by retaining claims reserves pertaining to the Lennox service warranties.

**Amended answer to third-party complaint with counterclaims**

In its amended answer to the third-party complaint with counterclaims (Dkt. No. 27), Protective/WDCIC asserts, among other defenses, the defense that the third-party claim is barred to the extent that it seeks coverage for claims arising out of an uninsured oral agreement. Protective/WDCIC interposes two counterclaims: (1) for judgment declaring that it is not obligated to reimburse Fortis/JASWCO; and (2) for contractual indemnification from Fortis/JASWCO, based on a provision in the Stock Purchase Agreement pertaining to Protective's acquisition of WDCIC.  Protective/WDCIC also argues that Lennox' claims against Fortis/JASWCO should be dismissed, thus rendering the third-party claims moot.

### MOTIONS

Presently before the Court are the following motions:

1. Motion (Dkt. No. 32) by Lennox for partial summary judgment on the issue of Fortis/JASWCO's liability to Lennox, including a declaration as to Lennox' entitlement to damages and attorney's fees.

2. Motion (Dkt. No. 33) by Fortis/JASWCO for summary judgment dismissing all causes of action asserted by Lennox, and on its first counterclaim against Lennox for setoff. [4]  In the event Fortis/JASWCO is not awarded summary judgment dismissing

---

[4] Although the second counterclaim in Fortis/JASWCO's answer to the amended complaint

-5-

Lennox' claims, it seeks summary judgment on its claims that third-party defendants Protective/WDCIC are liable to pay any sums due Lennox.

3. Motion (Dkt. No. 37) by Protective/WDCIC for summary judgment dismissing the third-party complaint, or for partial summary judgment in the form of a declaration of liability against Fortis/JASWCO on Protective/WDCIC's counterclaim for indemnity. Protective/WDCIC also argues that Lennox' claims against Fortis/JASWCO should be dismissed, thus rendering the third-party claims moot.

## FACTS

The facts relevant to Lennox' motion for partial summary judgment against Fortis/JASWCO and Fortis/JASWCO's motion for summary judgment against Lennox are largely undisputed. The following factual recitation is quoted directly from those portions of Lennox' Statement of Material Facts (Dkt. No. 35) that are not disputed by Fortis/JASWCO.

In connection with sales of its HVAC equipment, Lennox offers consumers the option of purchasing a service warranty for their furnace or air conditioner.

By the terms of a service agreement effective as of January 1, 1993, and as amended by an instrument effective December 30, 1994 (referred to collectively as the "Service Agreement"), Lennox hired JASWCO to administer the Warranty Program.

Pursuant to the amendment executed in December 1994, the Service Agreement's duration was extended through December 30, 1998.

Under the terms of the Service Agreement, Lennox retained JASWCO to
a) Offer and sell service warranties (the "Service Warranties") to Lennox' customers,
b) Arrange for the service and repair for a variety of warranted Lennox equipment through authorized service contractors,
c) Deal with the service contractors on behalf of Lennox with respect to the administration of Lennox service obligations under the Service Warranties,
d) Maintain a toll-free telephone number that Lennox' consumers and dealers could use to make inquiries about Service Warranties and warranty claims arising therefrom ("Warranty Claims") and
e) Assume full responsibility for making payments to Service Contractors for services performed under the Service Warranties.

---

seeks contractual attorney's fees and costs, Fortis/JASWCO does not request this relief in its papers on this motion. Accordingly, the Court does not address it.

In addition, the parties expressly agreed "that Lennox shall bear no financial responsibility in connection with [Service Warranties] issued pursuant to this Agreement."

In the same vein, the Service Agreement provided that JASWCO's "obligations and responsibilities to Lennox and its customers under this Agreement shall survive the termination of this Agreement and shall continue with respect to the [Service Warranties] sold by JASWCO prior to the date of termination."

The Service Agreement also provided that in an action to enforce or interpret its terms, a prevailing party will be entitled to an award of attorneys' fees.

JASWCO's day-to-day administration of the Warranty Program involved the processing and payment of Warranty Claims arising from the Service Warranties that JASWCO had issued (the "JASWCO-issued Service Warranties") and regular dealings with JASWCO's third-party administrator, Granger, Inc. ("Granger").

Thus, while JASWCO was Lennox' third-party administrator, it was Granger, in turn, that served as a third-party administrator for JASWCO.

When Lennox and JASWCO entered into the Service Agreement in 1993, JASWCO was an indirectly-held and wholly-owned subsidiary of John Alden.

By late 1995 or early 1996, John Alden decided it would exit the service warranty administration business because JASWCO was reportedly losing money, or at least not earning any.

By a letter dated November 6, 1997, JASWCO served notice of its intent to cancel the Service Agreement and cease issuing Lennox Service Warranties effective January 1, 1998.

JASWCO's November 1997 notice of termination notwithstanding, JASWCO continued to issue Service Warranties for Lennox until on or about August 31, 1998.

When JASWCO stopped issuing Service Warranties for Lennox, administration of existing Service Warranties was placed in a "run-off" mode.  Thus, while JASWCO had stopped issuing Service Warranties on behalf of Lennox, JASWCO was to "continue to honor existing obligations" arising from the Service Warranties it had issued, as it was obligated to do under paragraphs 2.4 and 2.7 of the Service Agreement.

***

In and around August or September 1998, Fortis acquired a number of John Alden companies, JASWCO among them.

By a letter dated August 31, 1998, Mr. Dery of John Alden confirmed with Lennox' Dick Ansley that "Lennox will no longer be issuing John Alden's service warranty contract or collecting any premium on behalf of John Alden after August 31, 1998. Obviously, we agreed to the termination of the [Service Agreement] between John Alden and Lennox as to the issuance of new business."

Mr. Dery further stated in that letter of August 31st: "It is our understanding that Lennox is anxious to assume the existing business as soon as possible. We are ready and willing to give serious consideration to a commercially reasonable proposal regarding such transfer."

The "commercially reasonable proposal" referred to by Mr. Dery concerned a transfer of funds from JASWCO to Lennox in consideration of Lennox' assumption of JASWCO's administrative responsibilities, namely the processing and payment of Warranty Claims arising from the JASWCO-issued Service Warranties.

It was JASWCO's, not Lennox', responsibility to administer and pay the Warranty Claims arising from the JASWCO-issued Service Warranties.

\*\*\*

While there were discussions between the parties about JASWCO's effecting "[a] fair transfer of monies" to Lennox in connection with Lennox' assumption of JASWCO's duty to administer the Warranty Program, no agreement as to that issue was ever completed.

Effective in and around September 1998, Lennox began administering its Warranty Program on an in-house basis.

Lennox began paying Warranty Claims arising from JASWCO-issued Service Warranties at least as early as January 1999.

Under the terms of the Service Agreement, the defendants' obligation to administer the JASWCO-issued Service Warranties survived the termination of the Service Agreement.

\*\*\*

Lennox continues to administer the Warranty Program today and, in so doing, continues to pay Warranty Claims arising from JASWCO-issued Service Warranties (and will continue doing so for the foreseeable future).

By a letter dated September 4, 1998, Lennox' Dick Ansley proposed a solution to the unresolved issue of the financial transfer needed in connection with Lennox' taking on JASWCO's role as administrator of the Warranty Program.

-8-

By a letter dated September 10, 1998, John Alden's Adrian Dery advised Granger (JASWCO's third-party administrator) that Lennox and JASWCO had agreed to the termination of the Service Agreement and that Lennox "has also proposed to assume liability for all existing business that was written prior to September 1, 1998."

By that same letter of September 10th Mr. Dery acknowledged the need "to conclude a financial settlement for these two transactions" and stated that both JASWCO and Lennox were "looking for a settlement and transfer at the earliest possible time."

In and around October 1998, the management of Fortis (which by then had purchased JASWCO) was "reviewing alternatives" on how to resolve matters concerning JASWCO's existing business in the Lennox Warranty Program.

During the month of October 1998, John Alden's Adrian Dery assisted Fortis's review of "alternatives" concerning JASWCO and its Lennox block of business by authoring no fewer than five (5) memoranda which were sent to Fortis's David Gubbay.

Mr. Dery's October 1998 memoranda to Mr. Gubbay contained a series of proposals, related a number of "talking points" and requested direction from Fortis's David Gubbay regarding JASWCO's financial settlement with Lennox.

Mr. Dery directed these memoranda to Mr. Gubbay because Mr. Gubbay had authority to approve JASWCO's financial settlement with Lennox.

Mr. Dery never received instruction from Mr. Gubbay "to proceed" with JASWCO's financial settlement with Lennox.

JASWCO did not effect a financial settlement with Lennox during Mr. Dery's tenure with John Alden, which ended in late 1998 or early 1999.

Fortis's David Gubbay recalled there being an issue in 1998 concerning JASWCO's buy-out of its obligations to administer the JASWCO-issued Service Warranties.

Prior to his departure from Fortis in late 1998 or early 1999, though, Mr. Gubbay never gave anyone at Fortis or JASWCO any direction about what should be done regarding a financial settlement in connection with JASWCO's Lennox warranty business.

Fortis's office in Syracuse, New York was eventually given the responsibility of administering JASWCO's run-off warranty business.

When JASWCO's run-off warranty business was transferred to Fortis's Syracuse office, the authority to effect a financial settlement with Lennox on JASWCO's behalf was conveyed to Fortis's Terry Kryshak, who worked in Fortis's Syracuse office.

Fortis's Terry Kryshak had no recollection of being told anything about an unresolved financial issue relating to JASWCO's Lennox block of warranty business in connection

with his office's taking on JASWCO's run-off service warranty administration business.

Following the July 2001 retirement and then August 2001 death of Lennox' Dick Ansley, Lennox' Jim Cadena assumed responsibility for the financial aspects of the Lennox Warranty Program in or around the fall of 2002.

Up until that point in time, Mr. Cadena had been concerned primarily with the operational aspects of the Warranty Program.

Based on conversations that Mr. Cadena had with the late Dick Ansley during late summer 1998, Mr. Cadena understood that Lennox and JASWCO had agreed to an arrangement whereby Lennox would pay Warranty Claims arising from the JASWCO-issued Service Warranties and JASWCO would in turn reimburse Lennox therefor.

Mr. Cadena sent a letter to Fortis dated December 11, 2002 and thereby requested reimbursement of the various Warranty Claims that Lennox had processed and paid in connection with JASWCO-issued Service Warranties.

Mr. Cadena's payment request from December 2002 eventually found its way to the defendants' Cynthia Capone in Syracuse at some point during January 2003.

In and around March 2003, Ms. Capone requested reimbursement from third-party defendant Western Diversified Casualty Insurance Company for the claims detailed in Mr. Cadena's December 2002 letter.

To date, the defendants have not paid Lennox for the Warranty Claims detailed in Mr. Cadena's December 2002 correspondence.

To date, the defendants have not paid Lennox for those Warranty Claims that have arisen from the JASWCO-issued Service Warranties and which Lennox has paid subsequent to those set forth in Mr. Cadena's letter of December 11, 2002.

As of April 30, 2005, Lennox has paid approximately $710,000 (U.S.) and $96,000 (Canadian) in Warranty Claims arising from JASWCO-issued Service Warranties.

Lennox continues to administer the Warranty Program today.  Given that some of the JASWCO-issued Service Warranties will not expire until some time in 2007 or 2008, Lennox will continue to pay additional Warranty Claims on JASWCO-issued Service Warranties.

(Paragraph numbering, headings and citations to record omitted.)

Additional pertinent facts, set forth in Fortis/JASWCO's Statement of Material Facts

-10-

(Dkt. No. 34) in support of its motion for summary judgment, are set forth below, along with the responses by Lennox in its opposition papers (Dkt. No. 55).

Fortis/JASWCO's statement:
> A Lennox customer who wished to report a warranty claim would call an 800 number in Granger's office to report a claim. Granger would advise the customer where to obtain service for the Lennox equipment, and would then handle all paperwork in connection with that claim.

Lennox' response:
> Admitted, except insofar as this paragraph can be read to allege that any such activities took place subsequent to September 1998, when Lennox took over as the Warranty Program's administrator.

\*\*\*

Fortis/JASWCO's statement:
> Management of John Alden was not pleased with the financial performance of JASWCO, and in 1996, management decided to "run-off" the business, *viz.*, not issue new warranties for the various retailers in its program while continuing to be responsible for claims arising under existing warranties until those warranties were "run-off," *viz.*, had expired. By the end of 1997, JASWCO was in run-off for all retailers in its service warranty program except for Foley's and Lennox.

Lennox' response:
> Admitted.

Fortis/JASWCO's statement:
> In November 1997, JASWCO sent a letter to Lennox, advising Lennox that JASWCO was "withdrawing from this [service warranty] business," and stating its intention to not issue new service warranties for the Lennox program "effective January 1, 1998." In that letter, JASWCO assured Lennox that it would "continue to honor valid claims on all existing contracts." The JASWCO-Lennox Service Agreement was not scheduled to expire until December 1998, and Lennox did not agree to let JASWCO stop issuing new warranties at that time.

Lennox' response:
> Denied on the following grounds: While the Service Agreement allowed for termination by either of the parties thereto, it also required that a party give notice of its intent to terminate 60 days prior to year's end. JASWCO's notice of November 7, 1997 was not served 60 days prior to year-end 1997, as the Service Agreement required. It was therefore JASWCO's failure to give timely notice in November 1997 that led to the Service Agreement being carried forward until in or around September 1998. This paragraph is otherwise admitted.

Fortis/JASWCO's statement:

Richard Ansley of Lennox prepared a June 1, 1998 "Position Paper" for senior management of Lennox in which Mr. Ansley told senior management of his intention to negotiate a "lump-sum buyout" of the existing JASWCO warranties. Under this arrangement, Lennox would allow JASWCO to stop issuing new warranties and would negotiate for the return of money that had been paid in connection with the existing warranties which was then held in Western Diversified's claim reserves and JASWCO's accounts for administrative expenses. Lennox would then assume liability for all future claims on those existing warranties.

Lennox' response:

Denied on the following grounds: Lennox' Jim Cadena and Dick Ansley prepared the Position Paper dated June 1, 1998, with Mr. Cadena doing the bulk of the work involved therein. In addition, while it is true that the Position Paper refers to an intent to negotiate a lump-sum transfer of reserves from JASWCO to Lennox, the defendants and Lennox had also discussed the possibility of a reimbursement arrangement as late as October 7, 1998. This paragraph is otherwise admitted.

Fortis/JASWCO's statement:

By letter to Robert Ansley (of Lennox) dated August 31, 1998, Adrian Dery (of JASWCO) confirmed that Lennox would no longer issue new JASWCO warranties after August 31, 1998.

Lennox' response:

Denied on the following grounds: Mr. Dery further stated in that letter of August 31st: "It is our understanding that Lennox is anxious to assume the existing business as soon as possible. We are ready and willing to give serious consideration to a commercially reasonable proposal regarding such transfer." Additionally, Lennox did in fact assume responsibility for administering the Warranty Program's so-called existing business. Additionally, the "commercially reasonable proposal" referred to by Mr. Dery concerned a transfer of funds from JASWCO to Lennox in consideration of Lennox' assumption of JASWCO's administrative responsibilities, namely the processing and payment of Warranty Claims arising from the JASWCO-issued Service Warranties. This paragraph is otherwise admitted.

Fortis/JASWCO's statement:

By letter dated September 4, 1998, Mr. Ansley advised Mr. Dery that Lennox "is prepared to assume all liability for all [existing] warranty contracts that were sold by Lennox dealers in the United States and Canada, effective September 21, 1998." Mr. Ansley described various formulas that could be used to calculate the "financial transfers of the balance of funds" to Lennox that were being held by Western Diversified and JASWCO in connection with the existing warranties.

Lennox' response:

Denied on the following grounds: Lennox' Dick Ansley, by his letter of September 4,

1998, proposed a solution to the unresolved issue of the financial transfer that was needed in connection with Lennox' taking on JASWCO's role as administrator of the Warranty Program.   This paragraph is otherwise admitted.

Fortis/JASWCO's statement:
    Messrs. Ansley and Dery thereafter had a few telephone discussions in September and early October 1998 concerning this proposal. They never met face-to-face.   Mr. Ansley was the only Lennox participant in these discussions.   Mr. Dery was the only participant on behalf of JASWCO.

Lennox' response:
    Admitted.

Fortis/JASWCO's statement:
    On October 7, 1998, Messrs. Ansley and Dery agreed to the concept of a "lump-sum buyout." In that discussion, they did not agree on any specifics of this "lump-sum buyout," including how much of the claims reserves and money for administrative expenses was to be returned to Lennox by Western Diversified and JASWCO. There were no further talks between Mr. Dery and Mr. Ansley after this October 7, 1998 telephone discussion.

Lennox' response:
    Denied on the following grounds: Mr. Dery's memorandum of October 8th also reflects that he and Mr. Ansley were at that time discussing the option of a reimbursement arrangement.   Additionally, Mr. Dery acknowledged that he and Lennox' Dick Ansley had discussed a reimbursement arrangement "[i]n conceptual terms" in or around October 1998.   And while Mr. Dery was adamant that there had been no agreement reached whereby JASWCO would reimburse Lennox for payments of Warranty Claims arising from JASWCO-issued Service Warranties, he also recognized that "JASWCO had obligations to service those warranties through the term, five or ten years."   Additionally, in or around the late summer of 1998, Dick Ansley had advised Lennox' Jim Cadena that Lennox would take over as the Warranty Program's administrator and be reimbursed for Warranty Claims paid in connection with JASWCO-issued Service Warranties.   This paragraph is otherwise admitted.

Fortis/JASWCO's statement:
    Mr. Ansley was not an officer of Lennox. Mr. Dery was not an officer of JASWCO. Neither Mr. Dery nor Mr. Ansley had the authority to enter into a "lump-sum buyout" on behalf of JASWCO and Lennox, respectively. Mr. Dery had to obtain the approval of David Gubbay, a Senior Vice President of Fortis. Mr. Ansley had to obtain the approval of James Mishler, Lennox's Vice President of Sales and Marketing.

Lennox' response:
    Denied on the following grounds: The defendants' duty to administer the JASWCO-issued Service Warranties survived the Service Agreement's termination effective in or around September 1998; it was the defendants' obligation to pay

Warranty Claims arising from the JASWCO-issued Service Warranties; Lennox began administering the Warranty Program effective in or around September 1998 and in so doing began paying Warranty Claims on JASWCO-issued Service Warranties; Lennox thereby assumed the defendants' duty to administer the Warranty Program and pay such Warranty Claims; and the defendants admit that there should have been a fair transfer of funds in connection with Lennox' taking over as the Warranty Program's administrator and that no such transfer has taken place. This paragraph is otherwise admitted.

Fortis/JASWCO's statement:

Mr. Dery never made an offer to Lennox, and never presented any proposal to David Gubbay for his approval. There is no evidence that Mr. Ansley presented any proposal to Mr. Mishler for approval.

Lennox' response:

Denied on the following grounds: During the month of October 1998, the defendants' Adrian Dery assisted Fortis's review of "alternatives" concerning JASWCO and its Lennox block of business by authoring no fewer than five (5) memoranda which were sent to Fortis's David Gubbay. Those memoranda from Mr. Dery contained a series of proposals, related a number of "talking points" and requested direction from Fortis's David Gubbay regarding JASWCO's financial settlement with Lennox. In addition, on October 5, 1998, Mr. Dery raised the matter of "Drafting Legal agreement to Settle Lennox" with Mr. Gubbay by forwarding a draft agreement concerning this issue and stated in his covering memorandum that if the attached draft agreement "is on the right track, it needs to be assigned to legal to begin drafting the actual agreement." In addition, Mr. Dery stated in his October 8, 1998 memorandum to Mr. Gubbay that the defendants "need to start drafting this agreement immediately" because Lennox was "anxious to take this business and will do so without a customer file." This paragraph is otherwise admitted.

Fortis/JASWCO's statement:

In September 1998, Fortis, Inc. purchased the stock of John Alden, and Messrs. Dery and Gubbay left the employment of John Alden and Fortis, respectively, at the end of December 1998.

Lennox' response:

Admitted.

Fortis/JASWCO's statement:

Section 11.10 of the Lennox-JASWCO Service Agreement states that "no waiver, modification or amendment of any of the terms hereof shall be binding on either of the parties hereto unless in writing and signed by the parties hereto." Neither Mr. Ansley nor Mr. Dery, nor anyone acting on behalf of Lennox or JASWCO, executed any writing concerning an amendment of, modification to, or waiver of the Lennox-JASWCO Service Agreement as a result of the discussions between Messrs. Ansley and Dery are described above.

-14-

Lennox' response:
        Denied insofar as the letters and memoranda authored by Messrs. Dery and Ansley constitute writings concerning an amendment of or modification to the Service Agreement.  Admitted insofar as this paragraph refers to and quotes from section 11.10 of the Service Agreement.

Fortis/JASWCO's statement:
        In September 1998, Lennox took over responsibility for administering claims under the JASWCO warranties. Lennox did not submit any warranty claims to JASWCO from September 1998 until December 2002.

Lennox' response:
        Denied on the following grounds: In September 1998, Lennox took over the defendants' responsibility for administering claims under the JASWCO issued Service Warranties.  This paragraph is otherwise admitted.

(Paragraph numbering and citations to record omitted.)

## DISCUSSION

**Summary judgment standard**

      A party moving for summary judgment bears the initial burden of demonstrating that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the Court, viewing the evidence in the light most favorable to the nonmovant and drawing all reasonable inferences in nonmovant's favor, determines that the movant has satisfied this burden, the burden then shifts to the nonmovant to adduce evidence establishing the existence of a disputed issue of material fact requiring a trial.  *See Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 465 (2d Cir.1989).  If the nonmovant fails to carry this burden, summary judgment is appropriate.  *See Celotex,* 477 U.S. at 323.

**Amended complaint**

      Lennox' causes of action in its amended complaint are as follows:

First:  Breach of contract based on the failure of JASWCO to fulfill its obligation

under the 1998 amendment to reimburse Lennox with respect to the payments on warranty claims of Lennox' customers.

Second: Breach of contract based on JASWCO's failure since September 1, 1998 to administer warranty claims of Lennox' customers under the 1993/1994 Service Agreement.

Third: Quasi-contract/unjust enrichment to Fortis/JASWCO based on Lennox' conduct since September 1, 1998 in paying warranty claims which JASWCO was obligated to pay.

Fourth: Promissory estoppel based on Lennox' reasonable reliance on the promise by JASWCO that it would reimburse plaintiff for customer warranty claims paid by Lennox that were the obligation of JASWCO.

Fifth: Judgment declaring that Fortis/JASWCO is obligated to reimburse Lennox for customer warranty claims based on the 1993/1994 Service Agreement, the 1998 amendment and quasi-contract/unjust enrichment.

Sixth: Attorney's fees and costs under the 1993/1994 Service Agreement.

Lennox and Fortis/JASWCO agree that due to a choice of law clause in the 1993 Service Agreement, ¶ 11.11, Texas law applies to issues of construction and effect of the 1993/1994 Service Agreement.

**1993/1994 Service Agreement**

The Court first considers Lennox' claims based on JASWCO's obligations under the 1993/1994 Service Agreement. Lennox contends that beginning in September 1998, Lennox began performing JASWCO's obligations regarding existing business, [5] and that JASWCO ceased performing. Fortis/JASWCO contends that JASWCO was ready and willing to

---

[5]

As do the parties, the Court refers to the JASWCO-issued service warranties for Lennox' products as the "existing business." The ongoing administration and payment of claims under these warranties (some of which do not expire until 2007 or 2008) is the basis of the present dispute. The warranties which were newly issued by Lennox as a result of JASWCO's November 6, 1997 letter are referred to herein as "new business"; the administration and payment of claims on new business is not in issue here.

continue to perform those obligations during and after September 1998, but that Lennox'

conduct prevented it from doing so.

It is basic contract law that "a contract is breached when one party's performance is

hindered or rendered impossible by the other."  23 *Williston on Contracts* (4ᵗʰ Ed.) § 63.26.

Texas case law holds that "if one party to a contract is prevented by the acts of the other party

to the contract from performing such contract, then the party so prevented from performing is

excused from further performance of the contract.  His failure to perform under those

circumstances cannot be made the basis of an action for damages for a breach of the contract."

*L.H. Land Painting Co., Inc. v. S & P Constr., Inc.*, 516 S.W.2d 14, 16 (Tex.Civ.App. 1974)

(cited in *United States for Use of Wallace v. Flintco Inc.*, 143 F.3d 955, 968 (5ᵗʰ Cir. 1998));

*accord O'Shea v. Int'l Bus. Machs. Corp.*, 578 S.W.2d 844, 846 (Tex.Civ.App. 1979) ("As a

general rule, performance is excused when a party to a contract prevents the other party from

performing." (citation omitted)); *Atomic Fuel Extraction Corp. v. Slick's Estate*, 386 S.W.2d

180, 186 (Tex.Civ.App. 1964) ("'The principle that prevention by one party excuses

performance by the other, both of a condition and of a promise, may be laid down broadly for

all cases.'" (quoting 5 *Williston on Contracts* (3ʳᵈ Ed.), § 677)).

In the case at bar, the undisputed proof is that on or about September 21, 1998, despite

the absence of a signed modification contract regarding existing business, Lennox redirected

the toll-free ("800") number so that a customer placing a telephone call concerning an existing

service warranty would reach Lennox, not Granger.  As Lennox states, it "took over as the

Warranty Program's administrator" in September 1998 and began administering and paying

the claims on the existing business.  Thus, as of September 1998, Lennox began providing the

services and payments that it had contracted with JASWCO to provide under the 1993/1994

Service Agreement.  In Lennox' own words, it paid "thousands" of claims between September 1998 and December 2002. [6]  It is undisputed that the effect of Lennox' conduct was that Granger and JASWCO thereafter were unable directly to administer or pay any claims on the existing business.  Further, there is unrefuted evidence that even after Lennox redirected the 800 number, Granger and JASWCO "stood ready" to meet their obligations to Lennox regarding existing business.  Accordingly, the undisputed facts demonstrate that Lennox' conduct in changing the 800 number and administering and paying the claims on the existing business prevented JASWCO and Granger from performing.

Under Texas law, Lennox' conduct in preventing JASWCO from performing under the 1993/1994 Service Agreement excused JASWCO from further performance; thus, Lennox has no viable claim against Fortis/JASWCO for breach of that agreement.  *See generally Wallace*, 143 F.3d at 968; *L.H. Land Painting Co.,* 516 S.W.2d at 16.  There is no valid legal theory upon which Lennox may contract with JASWCO to perform certain duties, then perform those duties itself thereby preventing JASWCO from performing, and then compel JASWCO to reimburse it for doing so. [7]

It is true that at one point in its motion papers, Lennox appears to argue that some unspecified breach in performance on the part of Fortis/JASWCO forced Lennox to take over administering and paying on the existing business.  On page 8 of its Amended Memorandum of

---

[6]

In its Statement of Material Facts (Dkt. No. 35), filed May 13, 2005, Lennox states that it "continues to administer the Warranty Program today."

[7]

It is irrelevant that, in Lennox' words, Fortis/JASWCO "wanted nothing more than to be rid of JASWCO's service warranty administration."  While such a desire might well have affected Fortis/JASWCO's bargaining position, it does not, without more, create a contract.  Nor does it give rise to an obligation to reimburse Lennox for performing Fortis/JASWCO's responsibilities.

Law in support of its motion for partial summary judgment (Dkt. No. 74),  Lennox makes the

following assertion:

> Beginning in and around September 1998, however, the defendants ceased
> administering the Warranty Program, as they were required to under the terms of the
> Service Agreement. In the absence of JASWCO's performance, Lennox began
> administering the Warranty Program, including the JASWCO-issued Service
> Warranties. Moreover, in and around January 1999 Lennox began processing and
> paying Warranty Claims arising from the JASWCO-issued Service Warranties. It was
> the defendants' duty to administer the JASWCO-issued Service Warranties and pay
> any Warranty Claims arising therefrom. It is undisputed that the defendants have failed
> to do so.

The implication that Lennox was compelled to begin administering the existing business in

September 1998 as a result of some breach of performance on the part of JASWCO is wholly

lacking support in the record and is contradicted by Lennox' own evidence and arguments

regarding events in summer and fall 1998. [8]  Indeed, Lennox did not allege any such breach in

its amended complaint.  Rather, it is Lennox' position throughout its papers that in September

1998 it took over the administration and payment of the existing business based on its

"expectation that the defendants would ultimately effect some sort of financial settlement

whereby Lennox would be paid for having assumed the defendants' contractual obligations."

As the evidence demonstrates, however, this expectation was not fulfilled.

Accordingly, the undisputed facts establish that Lennox' conduct prevented JASWCO

from performing under the 1993/1994 Service Agreement and thus excused JASWCO from

further performance.  Lennox does not demonstrate the existence of any material question of

---

[8]

While there is some unclear testimony by Cadena that JASWCO did not provide Lennox with
certain information Lennox requested and that there were some customer complaints about
JASWCO, there is nothing to suggest that this amounted to a breach by JASWCO, that
Lennox viewed it as such, or that this or any other breach on the part of JASWCO prompted
Lennox to take over administering the existing business.

fact on this issue.  Therefore, as a matter of law, Lennox has no viable claim against

Fortis/JASWCO for breach of the 1993/1994 Service Agreement.  Fortis/JASWCO is entitled

to summary judgment dismissing the second cause of action based on Fortis/JASWCO's

alleged failure since September 1, 1998, to administer and pay claims under the 1993/1994

Service Agreement.

**Alleged 1998 agreement**

It is undisputed that there is no signed contract reflecting the alleged 1998 agreement.

It is further undisputed that paragraph 11.10 of the 1993 Service Agreement between Lennox

and JASWCO contains the following provision:

> This agreement shall be deemed to constitute the entire agreement between the parties
> hereto and no waiver, modification or amendment of any of the terms hereof shall be
> binding upon either of the parties unless in writing and signed by the parties hereto.

The Texas statute of frauds provides that "an agreement which is not to be performed

within one year from the date of making the agreement" is not enforceable unless it is in

writing and signed by the person to be charged with the agreement.  Tex. Bus. & Com.Code §

26.01(a), (b)(6); *see Walker v. Tafralian*, 107 S.W.3d 665, 668 (Tex.App. 2003).  Whether a

contract falls within the statute of frauds is a question of law.  *See id.*  Where a written

contract is covered by the statute of frauds, a clause therein prohibiting oral modifications

and/or oral waivers is binding on the parties.  *See South Hampton Co. v. Stinnes Corp.*, 733

F.2d 1108, 1117 (5th Cir. 1984).

For an agreement to satisfy the statute of frauds, "there must be a written

memorandum which is complete within itself in every material detail, and which contains all

of the essential elements of the agreement, so that the contract can be ascertained from the

writings without resorting to oral testimony."  *Cohen v. McCutchin*, 565 S.W.2d 230, 232

(Tex.1978).  The written memorandum need not be contained in one document but may comprise various writings.  *See Key v. Pierce*, 8 S.W.3d 704, 708 (Tex.App. 1999).

Where an alleged agreement is so indefinite as to make it impossible for a court to fix the legal obligations and liabilities of the parties, it cannot constitute an enforceable contract. *See Meru v. Huerta*, 136 S.W.3d 383, 390 (Tex.App. 2004).  To create a legally binding agreement, the parties must have a meeting of the minds and must communicate consent to the terms of the agreement.  *Id.* at 391.  An agreement to make a future contract "is enforceable only if it is specific as to all essential terms, and no terms of the proposed agreement may be left to future negotiations."  *Id.*  An agreement to enter into negotiations in the future cannot be enforced because the court has no means to determine what sort of contract the negotiations would have produced.  *Id.*

In the case at bar, neither the 1993/1994 Service Agreement nor the alleged 1998 agreement can be performed within a year, because they cover warranties which are in effect until 2007 or 2008.  Accordingly, the agreements are within the Texas statute of frauds as a matter of law.  Moreover, the 1993/1994 Service Agreement by its terms prohibits oral modification and oral waiver.  Thus, to be effective, any modification of the terms of the 1993/1994 Service Agreement must be in writing.

Lennox does not contend that Texas law is otherwise.  Rather, Lennox asserts that there are sufficient writings regarding the alleged 1998 agreement to satisfy the requirement of a writing, and that the Court may supply the missing price term thereto.  The writings upon which Lennox relies are as follows: the August 31, 1998 letter by Adrian Dery (formerly JASWCO's Director of Budget and Finance) on behalf of Fortis/JASWCO to Richard Ansley, Lennox' Manager of Marketing Administration, inviting Lennox to make "a commercially

reasonable proposal" regarding transfer to Lennox of the entire warranty program including the existing business; the September 10, 1998 letter by Dery acknowledging Lennox' proposal to assume liability for all existing business and requesting financial information to enable the parties to conclude a financial settlement; and two memoranda written by Dery to his own superiors at Fortis/JASWCO, dated October 5 and 8, 1998, discussing the possible transfer of existing business.  The October 8 memo sets forth three options for handling the existing business: the status quo, a reimbursement arrangement, and a lump sum buyout.

The record also includes a September 4, 1998 letter from Ansley to Dery setting forth proposals but stating that Lennox was unable to make a financial offer because it lacked necessary information regarding the existing business; and three more internal memoranda from Dery to his superiors at Fortis/JASWCO, two dated October 13, 1998 and one dated October 19, 1988, setting forth detailed (but inconclusive) financial calculations pertinent to financial settlement with Lennox.  Also, the record contains the December 11, 2002 letter by Cadena (Lennox' Manager of Dealer Marketing Services) to Fortis, requesting reimbursement for all payments made by Lennox "on behalf of John Alden/Fortis, Inc." since September 1, 1998.

As will be discussed below, the Court concludes that the alleged 1998 agreement is so indefinite as to make it impossible to fix the legal obligations and liabilities of the parties thereunder.  Thus, as a matter of law it cannot constitute an enforceable contract.  *See generally Meru*, 136 S.W.3d at 390-91.  For the same reasons, Lennox' supposed "partial performance" is not "unequivocally referable" to the alleged 1998 agreement, nor does it "corroborat[e] ... the fact that a contract actually was made" so as support an exception to the statute of frauds.  *See Wiley v. Bertelsen*, 770 S.W.2d 878, 882-83 (Tex.App. 1989).  Further,

-22-

due to the indefiniteness of the alleged 1998 agreement, it is impossible for the Court to supply a missing price term.

First, it is manifest from a cursory review of the documents upon which Lennox relies that the parties had not agreed even on the preliminary matter of whether any new arrangement would be based on (1) a reimbursement procedure, or (2) a lump-sum payment to Lennox by Fortis/JASWCO.  The December 11, 2002 letter to Fortis/JASWCO from James Cadena (who participated in the 1998 negotiations on behalf of Lennox), four years after the alleged 1998 agreement, demonstrates that he assumed that the parties had agreed on a reimbursement procedure as of September 1, 1998.  Yet, Dery's writings to his superiors at Fortis/JASWCO subsequent to September 1, 1998, contradict Cadena's assumption.  For example, Dery's October 8, 1998 memorandum (upon which Lennox relies) demonstrates that Dery recommended a lump-sum buyout, although he said reimbursement was an "option." And it appears from Dery's subsequent memoranda of October 13 and 19, 1998, that he was still pursuing the lump-sum buyout option.

Lennox now contends, however, in its amended complaint and elsewhere, that the parties agreed on a reimbursement procedure.  As stated, the documentary evidence contradicts this contention.  Even assuming that the Court may properly consider the deposition testimony on this issue, such evidence also demonstrates that Cadena and Ansley reached no such agreement with Dery.  In any event, it is undisputed that neither Ansley nor Cadena had authority to bind Lennox; no agreement would have been binding on Lennox unless approved by James Mishler, Lennox' Vice President of Sales and Marketing. Likewise, Dery had no authority to bind Fortis/JASWCO;  no agreement would have been binding on Fortis/JASWCO unless approved by David Gubbay, a Senior Vice President of

Fortis.  No such approvals occurred.

Moreover, the record presents indeterminate evidence regarding how a reimbursement procedure would have operated.  Cadena, who authored the December 11, 2002 letter on behalf of Lennox requesting reimbursement for over 2,000 claims paid by Lennox since 1998, testified that he had understood that Lennox would request reimbursement "regularly," meaning "monthly or quarterly or semiannually"; however, Lennox' first request for reimbursement was not made until four years had passed.  Dery of Fortis/JASWCO expressed concern that a reimbursement arrangement would "put Alden at unlimited exposure"; presumably, a fully negotiated reimbursement arrangement would have attempted to limit such exposure.  Also, presumably Fortis/JASWCO would have sought an arrangement designed to prevent a disclaimer of coverage by Protective/WDCIC.  Further, Terry Kryshak of Fortis testified that if a reimbursement contract had been formed it would have contained a "timely submission of claims" clause, so that Fortis "could properly be recording [its] liabilities."  Another unresolved issue regarding how a reimbursement arrangement would have operated arises from Granger's status as Fortis/JASWCO's third-party administrator.  It is unclear what arrangement Fortis/JASWCO would have reached with Granger. [9]  The terms of the alleged 1998 agreement are so indefinite as to make it impossible for the Court to fix the legal obligations and liabilities of the parties.

For the same reasons, Lennox' performance is not "unequivocally referable" to a

---

[9]

In fact, there is evidence that after September 1, 1998, Granger still considered itself responsible to administer the Lennox warranties and "stood ready" to do so.  Moreover, the record suggests that after September 1, 1998, Fortis/JASWCO , which held the "administrative reserve" allocated to payment of future administrative costs, may have continued to expend some portion of the administrative reserve to pay Granger to administer these warranties.

reimbursement agreement in the nature of the alleged 1998 agreement.  Likewise, the parties' actions do not corroborate that such a reimbursement contract was actually made.

Further, the Court rejects Lennox' argument that the Court can simply supply a reasonable price to be paid to Lennox by Fortis/JASWCO.  It is true that Texas courts have held that "[w]here the parties have done everything else necessary to make a binding agreement..., their failure to specify the price does not leave the contract so incomplete that it cannot be enforced."  *Burnside Air Cond. and Heating, Inc. v. T.S. Young Corp*., 113 S.W.3d 889, 894-95 (Tex.App. 2003) (citing *Bendalin v. Delgado*, 406 S.W.2d 897, 899-900 (Tex.1966)).  Here, however, unlike the situations in *Burnside* and *Bendalin*, it cannot be said that the parties have done "everything else necessary to make a binding agreement."  Indeed, in *Bendalin*, the Supreme Court of Texas quoted *Corbin on Contracts* for the proposition that "'[a] court cannot enforce a contract unless it can determine what it is.  It is not enough that the parties think that they have made a contract; they must have expressed their intentions in a manner that is capable of understanding.'"  406 S.W.2d 897, 899 (quoting 1 *Corbin, Contracts* (2d ed. 1963), § 95).  The *Bendalin* court added: "Thus, to be enforceable, a contract must be sufficiently certain to enable the court to determine the legal obligations of the parties thereto."  *Id.*  Here, as a matter of law there is no sufficiently certain contract with respect to which the Court could supply a missing price term.

Nor is it possible for the Court to establish a sum for a lump-sum buyout.  There was no agreement for such a buyout.  And there is no basis in law or fact for the Court to attempt to place itself in the position of the parties, evaluate their bargaining positions, and determine what sum they would ultimately have agreed upon or what sum would be reasonable.  Indeed, the documents and testimony disclose a number of factors which would likely have entered

-25-

into the negotiations, including the following: that Lennox had withheld from JASWCO all warranty payments Lennox received from its customers after January 1, 1998; that Lennox was "anxious" to assume the existing business; that Lennox believed that having two different claims administrators (one for the new warranties which Lennox was issuing, and one for existing business which Fortis/JASWCO was handling) was "[c]ertainly not a desired outcome"; that Fortis/JASWCO believed that it had been losing money on Lennox' warranties; that Fortis/JASWCO did not necessarily agree that Lennox would be entitled to receive the administrative reserves held by Fortis/JASWCO; that a timely lump-sum settlement would likely have included a refund of some portion of the claim reserve still held by Protective/WDCIC; and that Fortis/JASWCO considered itself entitled to a portion of the claim reserve in order to offset its administrative losses.  Under the circumstances, any attempt to fix the parties' rights and obligations could only be based on speculation.  The Court concludes on this record that as a matter of law, the 1993/1994 Service Agreement was not amended in 1998 to create a lump-sum buyout contract for which the Court could supply any missing terms.

Accordingly, the undisputed facts establish that the 1993/1994 Service Agreement was not amended in 1998.  Lennox does not demonstrate the existence of any material question of fact on this issue.  Therefore, as a matter of law, Lennox has no viable claim against Fortis/JASWCO for breach of the alleged 1998 agreement.  Fortis/JASWCO is entitled to summary judgment dismissing the first cause of action asserting that it breached the alleged 1998 agreement.

**Unjust enrichment**

The third cause of action in Lennox' amended complaint, headed "Quasi Contract /

-26-

Unjust Enrichment," avers:

> By paying its customers' warranty claims since on or about September 1, 1998 that were to be paid and administered by defendant JASWCO, the Plaintiff conferred a benefit on defendant JASWCO and defendant Fortis.

> The defendants have accepted and retained such benefit.

> It would be inequitable for the defendants to retain the value of such benefit without compensating Plaintiff.

Under Texas law, "unjust enrichment" is defined as "the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience." *Allen v. Berrey*, 645 S.W.2d 550, 553 (Tex.App. 1982). Recovery on a claim of unjust enrichment is based on quasi-contract. *Id*. Thus, "[i]f a valid express contract governing the subject matter exists there can be no recovery upon a contract implied by law." *Woodard v. Southwest States, Inc*., 384 S.W.2d 674, 675 (Tex. 1964); *accord Coghlan v. Wellcraft Marine Corp*., 240 F.3d 449, 454 (5th Cir. 2001); *Burlington Northern R.R. Co. v. Southwestern Elec. Power Co.*, 925 S.W.2d 92, 97 (Tex.App. 1996). The Court agrees with Fortis/JASWCO that the subject matter of the dispute in the case at bar is governed by the1993/1994 Service Agreement. Thus, Lennox cannot recover on the theory of unjust enrichment.

In any event, the undisputed facts do not support Lennox' claim that Fortis/JASWCO has unjustly retained a benefit. Lennox' Memorandum of Law in support of its motion for partial summary judgment recites that it relies on the following evidence:

> The defendants were and are obligated to administer the Warranty Program;

> The defendants therefore have a duty to administer the "*existing business*," i.e., the JASWCO-issued Service Warranties;

The defendants accordingly have a duty to pay Warranty Claims arising from the JASWCO-issued Service Warranties;

The defendants have failed to administer the Warranty Program and the JASWCO-issued Service Warranties and, more to the point, have failed and refused to pay the Warranty Claims arising therefrom;

It has instead been Lennox that has paid the Warranty Claims arising from the JASWCO-issued Service Warranties; and

Lennox began administering and has continued to administer the JASWCO-issued Service Warranties – and pay Warranty Claims arising therefrom – with the reasonable expectation that the defendants would ultimately effect some sort of financial settlement whereby Lennox would be paid for having assumed the defendants' contractual obligations.

(Emphasis in original.)

As Fortis/JASWCO points out, this cause of action primarily seeks reimbursement for the payment of Lennox' customers' warranty claims, yet the record shows that the money intended for payment of those claims is held, not by JASWCO, but by Protective/WDCIC. That this money is currently unavailable due to Protective/WDCIC's disclaimer (based on untimely submission of proofs of loss) is attributable to the conduct of Lennox, not of Fortis/JASWCO.  Further, as already noted, there is no evidence supporting the implication that Lennox was compelled to began administering the warranty program or paying claims in September 1998 as a result of JASWCO's breach of its obligations under the 1993/1994 Service Agreement.  Rather, as Lennox states, the record establishes without contradiction that "Lennox began administering and has continued to administer the JASWCO-issued Service Warranties – and pay Warranty Claims arising therefrom – with the reasonable expectation that the defendants would ultimately effect some sort of financial settlement whereby Lennox would be paid for having assumed the defendants' contractual obligations." Such conduct does not support a claim for unjust enrichment.

-28-

Accordingly, based on the undisputed facts, summary judgment dismissing the third cause of action in the amended complaint is granted.  For the same reasons, Lennox' fourth cause of action sounding in promissory estoppel is dismissed.

In light of the foregoing, summary judgment is granted dismissing the fifth cause of action for declaratory judgment and the sixth cause of action for attorney's fees and costs.

## CONCLUSION

It is therefore

ORDERED that the motion by plaintiff Lennox Industries, Inc. (Dkt. No. 32) for partial summary judgment is denied; and it is further

ORDERED that the motion by defendants/third-party plaintiffs Fortis, Inc. and John Alden Service Warranty Corporation (Dkt. No. 33) is granted insofar as it seeks summary judgment dismissing the complaint, and the motion is otherwise denied as moot; and it is further

ORDERED that the motion by third-party defendants Western Diversified Casualty Insurance Company and Protective Life Insurance Company (Dkt. No. 37) for summary judgment is granted on the ground that the third-party complaint is moot; and it is further

ORDERED that the action is dismissed on the merits in its entirety.

IT IS SO ORDERED.

November 16, 2005
Syracuse, New York

Norman A. Mordue
U.S. District Judge

-29-